**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MILDRED KINARD, EARLENE WHEELER, VICKY BORDEAUX and DONALD ROBINSON<br><br>     Plaintiffs,<br><br>v.<br><br>EAST CAPITOL FAMILY RENTAL, L.P., A&R MANAGEMENT, INC., and KETTLER MANAGEMENT, INC.<br><br>     Defendants. | Case No. 1:15-cv-1935 (RCL) |

## DEFENDANTS' MOTION TO DISMISS

Defendants East Capitol Family Rental, L.P., A&R Management, Inc., and Kettler

Management, Inc., move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the

Complaint filed by Plaintiffs Mildred Kinard, Earlene Wheeler, Vicky Bordeaux and Donald

Robinson.  The Complaint fails to state a claim upon which relief can be granted.  A

memorandum in support of the Motion is attached and incorporated herein.

WHERFORE, Defendants request that the Court grant this Motion, dismiss the

Complaint, and grant such other relief as the Court deems appropriate.


Dated: December 31, 2015             Respectfully Submitted,


                                     _____/s/David G. Sommer_____
                                     David G. Sommer, Esq. (Md. Fed. Bar No. 27581)
                                     James D. Bragdon, Esq. (D.C. Bar No. 1017743)
                                     Gallagher Evelius & Jones LLP
                                     218 N. Charles Street, Suite 400
                                     Baltimore, MD  21201-4033
                                     (410) 727-7702
                                     *Attorney for Defendants East Capitol Family
                                     Rental, L.P. & A&R Management, Inc.*

O'Kelly McWilliams III, Esq. (Bar No. 448053)
GORDON & REES LLP
1300 I Street, NW, Suite 825
Washington, DC 20005
T: 202.399.1009
F: 202.800.2999
E: OMcWilliams@gordonrees.com
*Attorneys for Defendant Kettler Management, Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

MILDRED KINARD, EARLENE WHEELER,
VICKY BORDEAUX and DONALD ROBINSON

    Plaintiffs,

  v.

EAST CAPITOL FAMILY RENTAL, L.P., A&R
MANAGEMENT, INC., and KETTLER
MANAGEMENT, INC.

    Defendants.

Case No. 1:15-cv-1935 (RCL)

**MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

  Defendants East Capitol Family Rental, L.P., A&R Management, Inc., and Kettler

Management, Inc., submit this Memorandum in Support of their Motion to Dismiss.

**INTRODUCTION**

  Defendants are private parties that provide low-income housing. By contract with the

local housing authority and pursuant to their leases with Plaintiffs, Defendants have agreed to

follow certain statutory and regulatory requirements. Plaintiffs claim that Defendants violated

these contracts by failing to follow procedures for changing and calculating allowances for

tenant utilities. This is a lease disagreement—nothing more. Plaintiffs misplace reliance on

federal statutes to challenge, in a federal forum, the utility allowance procedures. The Court

should reject Plaintiffs' attempt to expand access to the federal court to resolve this contractual

dispute.

  Distorting the nature of the dispute and claiming a federal question under 42 U.S.C. §

1983, the United States Housing Act, and the Internal Revenue Code, Plaintiffs assert five causes

of action. They have labeled these claims: (1) 42 U.S.C. § 1983: Violation of the United States

Housing Act of 1937, 42 U.S.C. § 1437a(a)(1); (2) Violation of the United States Housing Act of 1937, 42 U.S.C. § 1437a; (3) Violation of the Low-Income Housing Tax Credit (LIHTC) Program, 26 U.S.C. § 42; (4) Violation of Plaintiffs' Leases with Defendants; and (5) Third-Party Beneficiary Claim for Violation of Indenture of Restrictive Covenants for Low Income Housing Tax Credits. Compl., ECF No. 1.

As discussed more fully below, the Complaint should be dismissed for the following reasons:  (1) Count I, brought under 42 U.S.C § 1983, fails to state a claim because Defendants are not state actors and the allegations involve statutory and regulatory violations that Congress did not intend to be enforced under Section 1983; (2) Count II fails to state a claim because the United States Housing Act does not provide for a private right of action; (3) Count III fails to state a claim because there is no private right of action for a tenant to enforce IRS regulations for the Low Income Housing Tax Credit Program; (4) upon dismissal of Counts I, II, and III, only the breach-of-lease and third-party contract claims under Counts IV and V would remain, and the Court should decline to exercise supplemental jurisdiction over these claims and dismiss them; and (5) Count V fails to state a claim because the tenants have no standing as third-party beneficiaries to enforce utility allowance complaints under an agreement intended to ensure the property is maintained for low income tenants.  The causes of action against A&R and Kettler, managing agents of the owner, East Capitol, should be dismissed because Plaintiffs' allegations are against the property owner, and A&R & Kettler cannot be liable as agents for a disclosed principal.

## BACKGROUND

### I.        Summary of Plaintiffs' Allegations

The Capitol Gateway housing development provides federally-subsidized housing to low-income residents in the District of Columbia.  Compl. ¶ 1.  A portion of the development is known as Capitol Gateway Family Rental and is owned by East Capitol Family Rental, LP ("East Capitol").  *Id.* ¶ 27-28.  This portion of the development consists of 86 family rental units, 61 of which are privately-owned units regulated under the regulations applicable to public housing units.  *Id.*  In 2005, the D.C. Housing Authority ("DCHA"), which owned the property on which the 86 units sit, entered into a long-term ground lease for the land with East Capitol, which subsequently constructed the housing units.  *Id.* ¶ 28.  East Capitol funded the development in part with a combination of government loans and the syndication to investors of low-income housing tax credits pursuant to Section 42 of the Internal Revenue Code ("IRC").  *Id.*  Also in May 2005, East Capitol entered into an Indenture of Restrictive Covenants for Low-Income Housing Tax Credits (the "Indenture") with the District of Columbia Department of Housing and Community Development.  *Id.* ¶ 32.  The Indenture binds East Capitol to operate the units as "Low-Income Units" defined as those meeting the rent restrictions set forth in Section 42 of the IRC relating to the Low Income Housing Tax Credit Program ("LIHTC").  *Id.*

Plaintiffs Mildred Kinard, Earlene Wheeler, Vicky Bordeaux, and Donald Robinson are residents of apartments at Capitol Gateway pursuant to written leases.  Compl. ¶ 5-8, 34.  With the exception of Ms. Kinard who began her tenancy at Capitol Gateway in 2008, the remaining named Plaintiffs have been living at Capitol Gateway since 2007.  *Id.* ¶ 5-8.  From the beginning of Plaintiffs' tenancies until 2014, A&R Management, Inc. ("A&R") served as the managing

agent at Capitol Gateway.  *Id.* ¶ 10.  From mid-2014 until the present, Kettler Management, Inc.

("Kettler") has served as managing agent at Capitol Gateway.  *Id.* ¶ 11.

Under Plaintiffs' leases, East Capitol promises to provide a utility allowance as a reduction in

rent.  Compl. ¶ 36.  East Capitol promises to comply with HUD regulations in making any

changes to the tenants' income-based rent.  *Id.* ¶ 37.  From the beginning of Plaintiffs' tenancies

until 2013, the utility allowances at Capitol Gateway remained constant.  *Id.* ¶ 46.

Plaintiffs Complaint alleges that changes to the utility allowances failed to comply with

federal regulations.  Plaintiffs allege that, on or around October 29, 2013, Capitol Gateway sent

some or all of the tenants a notice indicating that their utility allowances were being reduced as

of December 1, 2013, with the change taking effect at the tenant's next interim or annual

recertification.  *Id.* ¶ 47. According to Plaintiffs, the notice to tenants regarding the new utility

allowance figures did not describe the basis for the reduction, did not include information about

reviewing the documents related to the change, did not offer the residents an opportunity to

submit comments regarding the change, and did not inform residents regarding individual relief.

*Id.* ¶ 48.  In early 2015, tenants at Capitol Gateway experienced another reduction in their utility

allowances.  *Id.* ¶ 51.  Plaintiffs allege that some tenants did not receive the notices until after the

change or received no notice at all.  *Id.* ¶ 52.

Plaintiffs allege that the utility allowance change was based on a conversion to

calculation by the engineering method, one of the approved methodologies under the regulations.

Compl., ¶ 49.  The reduced utility allowances for electric charges adopted by Capitol Gateway

beginning in December 2013 and in early 2015 are allegedly inadequate for the average tenant in

an energy conservative household of modest circumstances to pay for a reasonable amount of

electric consumption.  *Id.* ¶ 57.

## II.      The United States Housing Act and regulation of private landlords.

Capitol Gateway is a privately owned low-income housing development in the District of Columbia.  East Capitol, its owner, receives rent subsidy payments from the federal government under the United States Housing Act, 42 U.S.C. § 1437 et seq. (the "Housing Act").  As Plaintiffs' Complaint describes, Congress modified the Housing Act in the 1990s to allow private and nonprofit entities to participate to address the inadequacy of existing public housing. Compl. ¶ 13.

The Housing Act is a federal funding statute that is structured to provide direction to government agencies that are distributing funds to local housing authorities and private entities. The majority of the Housing Act's provisions direct HUD and local public housing authorities on the requirements for recipients of federal funds, and the public authorities' obligations with regard to the recipients.  *See*, *e.g.*, 42 U.S.C. § 1437b (describing terms on which HUD may make loans to public housing agencies to finance the development, acquisition, or operation of low-income housing projects); 42 U.S.C. § 1437c (permitting HUD to make annual contributions, as grants and pursuant to contracts, to public housing agencies to develop low-income housing); 42 U.S.C. § 1437d (providing additional requirements for contracts and loans with public housing agencies); 42 U.S.C. § 1437e (providing authority for HUD to designate certain low-income housing projects for the elderly or disabled and imposing requirements); 42 U.S.C. § 1437f (authorizing HUD to fund Section 8 housing in various forms and imposing requirements).

The Housing Act does not directly impose requirements on the conduct of private actors who receive federal funds under the various programs in the statute.  The Act instead requires HUD and public housing agencies to ensure compliance with the requirements for low-income

housing, and further requires that certain funds be provided under contracts with specified terms.
As Plaintiffs' Complaint states, the enacting regulations require the public housing authorities to
"structure" the projects to "[e]nsure continued operation of the public housing units in
accordance with all Public Housing Requirements." 24 C.F.R. § 905.604(c)(1); Compl. ¶ 14.
Thus, a private recipient of federal funds under the Housing Act is obligated to follow the
statutory requirements as a matter of contract with the public housing agency and by agreeing to
be regulated by that agency.

Recipients of federal funds, such as East Capitol, assume additional obligations by
entering into leases with qualifying low-income tenants. The form of leases entered into by
private landlords participating in the program must include certain provisions that mirror
statutory or regulatory requirements. *See* 24 C.F.R. § 966.4 (imposing required terms of leases
with tenants in public housing developments). Low-income housing project owners thus agree
through the leases (but only through the leases or other contracts) to be subject to many
requirements that would not otherwise directly apply to them.

### III. The Brooke Amendment and Utility Allowance Regulations

The rent at low-income housing created by the Housing Act is limited to 30% of the
tenant's income by 42 U.S.C. § 1437a(a)(1), also known as the Brooke Amendment. That
section states in full:

> **(1)** Dwelling units assisted under this chapter shall be rented
> only to families who are low-income families at the time of their
> initial occupancy of such units. Reviews of family income shall be
> made at least annually. . . . a family shall pay as rent for a dwelling
> unit assisted under this chapter . . . the highest of the following
> amounts, rounded to the nearest dollar:
>
> > **(A)** 30 per centum of the family's monthly
> > adjusted income;

**(B)**   10 per centum of the family's monthly income; or

**(C)**   if the family is receiving payments for welfare assistance from a public agency and a part of such payments, adjusted in accordance with the family's actual housing costs, is specifically designated by such agency to meet the family's housing costs, the portion of such payments which is so designated.

42 U.S.C.A. § 1437a(a)(1).  The Brooke Amendment's definition of "rent" is intended to include a reasonable allowance for utility expenses.[1]

Neither the Brooke Amendment nor the Housing Act provides requirements for how the utility allowance is to be calculated.  The calculation of utility allowances is governed instead by HUD regulations.  The utility allowance is an approximation of expected expenses; *i.e.*, it is intended to approximate "the monthly cost of a reasonable consumption of . . . utilities and other services for the unit by an energy-conservative household of modest circumstances consistent with the requirements of a safe, sanitary, and healthful living environment."  24 CFR § 5.603. The amount is not intended to reflect actual amounts expended, nor is it intended to result in a strict limit on rent payments to 30%—if the tenant's actual utilities are less than the allowance, the tenant keeps the difference.  If the tenant's utilities are more than the allowance, he or she pays out-of-pocket, which results in a total rent payment of more than 30% of the tenant's income.

---

[1]   *See Wright v. City of Roanoke Redevelopment & Housing Auth.,* 479 U.S. 418, 429, 107 S. Ct. 766, 773 (1987).  In *Wright*, the Court held that Congress intended the definition of rent to include utility allowances based on Congress's acceptance of HUD regulations.  *See Wright*, 479 U.S. at 430, 107 S. Ct. at 773-774.  This issue was not briefed by the parties in *Wright*.  *See id.* at 437, 107 S. Ct. at 777 (O'Connor, J., dissenting).

The property owner determines the amount of the utility allowance and is given significant discretion to choose its method of calculation, as Plaintiffs' Complaint correctly describes. The owner can approximate the figure based on actual consumption data, on an "engineering method," or by using the HUD-model method, which provides standardized calculations based on the regulatory factors. The HUD regulations give discretion to the owner's calculation of the utility allowance. The landlord is given discretion in the choice of methodology. 24 C.F.R. § 965.505(c); *see also* HUD Utility Allowance Guidebook (Sept. 1998)[2] at 25, ("HUD gives [public housing landlords] wide latitude in how they develop utility allowances[.]"). The landlord's determination of allowances is final and valid unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 24 C.F.R. § 965.502(e).

The regulations provide certain procedural requirements for changing utility allowances. The regulations state that the notice of utility changes issued to tenants will describe the basis for the calculation, notify residents of the location of documents, provide residents 30 days to submit written comments, and notify them of the hardship exemption. 24 § CFR 965.502(c). The landlord must review its calculation annually and make revisions when appropriate or when utility rates increase by 10%. 24 C.F.R. § 965.507.

## STANDARD OF REVIEW

Rule 12(b)(6) permits a defendant to move to dismiss a complaint because it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When ruling on a defendant's motion to dismiss, "a judge must accept as true all of the factual allegations contained in the complaint." *Erikson v. Pardus,* 551 U.S. 89, 93, 127 S. Ct. 2197, 2200 (2007)

---

[2]     Available at: http://portal.hud.gov/hudportal/documents/huddoc?id=doc_10600.pdf

(citations omitted).  However, to survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and the pleading must contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570, 127 S. Ct. 1955, 1965, 1974 (2007).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).  The court need not accept as true inferences that are unsupported by facts or legal conclusions cast as factual allegations.  *Warren v. District of Columbia*, 353 F.3d 36, 40 (D.C. Cir. 2004).

Based on the above standards, and as demonstrated more fully below, Plaintiffs' Complaint should be dismissed.

## ARGUMENT

### I.      The Section 1983 claim should be dismissed because Defendants are not state actors.

Plaintiffs have failed to state a § 1983 claim because low-income housing is not a traditional, exclusive public function, and Defendants are therefore not state actors.

A claim under 42 U.S.C. § 1983 may be brought against only a state actor.  42 U.S.C. § 1983; *Flagg Bros. v. Brooks*, 436 U.S. 149, 155, 98 S. Ct. 1729, 1733 (1978)*; Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S. Ct. 2744, 2753-54 (1982).  "Careful adherence to the 'state action' requirement preserves an area of individual freedom by limiting the reach of federal law and federal judicial power."  *Lugar*, 457 U.S. at 936, 102 S. Ct. at 2753.  "Without a limit such as this, private parties could face constitutional litigation whenever they seek to rely on some state rule governing their interactions with the community surrounding them."  *Id.* at 937, 102 S. Ct. at 2754.  A plaintiff in a § 1983 claim must show a state action as part of their

*prima facie* case. *Sledge v. D.C.*, 63 F. Supp. 3d 1, 26 (D.D.C. 2014). Here, Plaintiffs have alleged that Defendants are state actors because they are performing a "previously exclusive state function." Compl., ¶ 90.

A private party will be considered a state actor if it has been delegated a power "traditionally exclusively reserved to the State." *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352, 95 S. Ct. 449, 454 (1974). This test is sometimes referred to as the "public function" test. The areas of exclusive reservation for the state include conducting elections, operating prisons, collecting taxes, and providing police and fire emergency response. *Nixon v. Condon*, 286 U.S. 73, 89, 52 S. Ct. 484, 487 (1932) (elections); *West v. Atkins,* 487 U.S. 42, 54, 108 S. Ct. 2250, 2258 (1988) (prisons); *Marsh v. Alabama*, 326 U.S. 501, 508-09, 66 S. Ct. 276, 279-80 (1946) (company towns). *See also Flagg Bros.*, 436 U.S. at 163, 98 S. Ct. at 1737 (commenting that traditional exclusive public functions may include fire and police protection and tax collection).

To qualify, the function must not merely be a governmental function, but a traditionally exclusive government function: "While many functions have been traditionally performed by governments, very few have been 'exclusively reserved to the State.'" *Flagg Bros.*, 436 U.S. at 158, 98 S. Ct. at 1734. Courts have been reluctant to extend the "exclusive function" theory beyond purely public functions. *See, e.g., id.* (holding that a program that enabled private actors to store and levy goods and resolve conflicts between creditors and debtors did not involve an exclusive state function); *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352, 95 S. Ct. 449, 454 (1974) (holding that a provision of utilities was not an exclusive government function); *S.F. Arts & Athletics v. U.S. Olympic Comm.,* 483 U.S. 522, 544, 107 S. Ct. 2971, 2985 (1987) (holding that conduct of Olympic amateur sports was not a traditional government function); *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 55, 119 S. Ct. 977, 987 (1999) (holding that the provision

of medical treatment and workers' compensation benefits is not state action); *Rendell-Baker v. Kohn*, 457 U.S. 830, 842, 102 S. Ct. 2764, 2772 (1982) (holding that education of high school students was not exclusive public function). "[W]here the government is merely a provider or regulator of services also provided by the private sector, the provision of such services does not become a public function merely by virtue of the government's participation." *Young v. Halle Hous. Associates, L.P.,* 152 F. Supp. 2d 355, 365 (S.D.N.Y. 2001).

Private parties who provide services under federal health and welfare programs are not converted to "state actors" by government funding and regulation. *See Blum v. Yaretsky*, 457 U.S. 991, 1011-12, 102 S. Ct. 2777, 2789-90 (1982). In *Blum*, a group of nursing home tenants sued their private nursing home under 42 U.S.C. § 1983 to challenge decisions to transfer or discharge patients determined to be ineligible. The nursing home was a private entity that received over 90% of its funding under State and Federal Medicaid programs and was subject to a comprehensive regulation scheme under those programs. *Id.* at 1011, 102 S. Ct. at 2789. The Court characterized these services as ones the "State [does] not necessarily provide." *Id.* The Court concluded that these programs were not required as a function of the state or mandated by the constitution. *Id.* The Court observed that "decisions made in the day-to-day administration of a nursing home are not the kind of decisions traditionally and exclusively made by the sovereign for and on behalf of the public." *Id.* at 1011-12, 102 S. Ct. at 2789-90. *Blum* demonstrates that private actors remain private actors even when they provide services under a program created, funded by, and regulated by the government. *See also Jackson*, 419 U.S. at 357–358, 95 S. Ct. at 456–57 ("The mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment.").

Low-income housing is not a traditional exclusive state function that gives rise to claims under 42 U.S.C. § 1983.  *See, e.g.*, *Miller v. Hartwood Apartments, Ltd.*, 689 F.2d 1239, 1243-44 (5th Cir. 1982).  In *Hartwood*, a group of Section 8 tenants in a "new construction" project brought a Section 1983 claim against their private landlords, alleging wrongful eviction. (Section 8 provides one type of subsidy under the Housing Act.)  The United States Court of Appeals for the Fifth Circuit cited *Blum* and concluded there was no state action:

> As reflected in the governing statute, the lessors in Section 8 new construction housing programs act as private parties.  They have sole responsibility "for all ownership, management, and maintenance responsibilities, including the selection of tenants and determination of tenancy[.]"  Pursuant to the statute and regulations, the lessor determines and certifies the eligibility of would-be tenants, establishes the level of appropriate government subsidy for each tenant, maintains the apartments, and oversees compliance with lease provisions.  Although HUD regulations do establish the broad guidelines with which the Section 8 lessors must comply, the lessors nevertheless operate the housing complexes on a day-to-day basis and are, in all senses of the word, private owners.

*Id.* at 1243-44.  The Fifth Circuit therefore affirmed the District Court's dismissal of the complaint.

Other courts have reached a similar conclusion.  *Hodges v. Metts*, 676 F.2d 1133, 1137 (6th Cir. 1982) ("One cannot seriously contend that the provision of low- and moderate-income housing is exclusively a public enterprise. . . ."); *Young,* 152 F. Supp. 2d at 365 (rejecting low income-housing as an exclusive governmental function and distinguishing the function of Section 8 landlords with public functions including education, voting, and medical services to prisoners); *Kabbani v. Council House, Inc.*, 406 F. Supp. 2d 1189, 1193 (W.D. Wash. 2005)

(holding that "the provision of low income housing has never been the exclusive province of the government").[3]

Although the United States District for the District of Columbia has not addressed whether a private landlord receiving funds under the Housing Act is performing an exclusive public function, its decisions support *Blum*'s restrictive view of the public function doctrine.  *See Abu-Jamal v. Nat'l Pub. Radio*, 1997 WL 527349, at *2 (D.D.C. Aug. 21, 1997), *aff'd* 159 F.3d 635 (D.C. Cir. 1998) (holding that NPR was not performing a traditional state function by providing public radio programming and observing, "[i]f anything, in this country, provision of information has been more a matter for the private press than the government"); *Lunceford v. D.C. Bd. of Educ.*, 745 F.2d 1577, 1579 (D.C. Cir. 1984) (holding that a private hospital providing services to disabled children under federal program, funding, and regulation was not state actor); *Melton v. Cmty. for Creative Non-Violence*, 1993 WL 367113, at *1 (D.D.C.

---

[3]     The cases in which courts reject Section 1983 claims against Section 8 private landlords are many.  *E.g.*, *Solivan v. Valley Hous. Dev. Corp.*, 2009 WL 3763920, at *9 (E.D. Pa. Nov. 9, 2009) ("Cases considering the application of 42 U.S.C. § 1983 against housing providers who accept and even rely exclusively on Section 8 vouchers hold that such housing providers are private actors who are not acting under color of state law."); *Altman v. Eco Vill., Ltd.*, 1984 WL 957880, at *4-5 (N.D. Ohio June 21, 1984) (holding that providing low-income housing under the Section 8 New Construction Housing Program was not an exclusive governmental function such that the private landlord's decisions were state actions); *Visintini v. Hayward*, 2009 WL 2413356, at *3 (N.D. Cal. Aug. 5, 2009) (holding that, in discrimination and First Amendment claim, Section 8 low-income senior housing landlords were not state actors); *Elliott v. Plaza Properties, Inc.*, 2010 WL 2541020, at *5 (S.D. Ohio June 18, 2010) (in action involving eviction of Section 8 tenant, rejecting federal jurisdiction under § 1983 because there was no state action); *Morris v. Dehaan,* 1991 WL 177995 (6th Cir. 1991) (unreported) (finding no state action in discrimination claim against Section 8 landlord); *Tosta v. Williams*, 1987 WL 17233, at *3 (E.D. Pa. Sept. 16, 1987) (holding that Section 8 landlord was not acting under color of state law for § 1983 purposes by participating in federal program); *Hawkins v. Linden Yards Apartments*, 2014 WL 1256419, at *1 n.2 (W.D. Tenn. Mar. 26, 2014) ("Even though Linden Yards apparently participates in the Section 8 housing program, such participation, without more, does not turn a private party into a government actor."); *Benford v. Smith*, 2005 WL 1325003, at *3 (E.D. Tenn. June 3, 2005) ("[P]articipation in the Section 8 housing program is insufficient to transform a private party into a state actor.").

Aug. 31, 1993) (concluding that a federally funded homeless shelter subject to state regulation was not state actor); *New Ways Ministry v. Nat'l 4-H Council*, 545 F. Supp. 1274, 1279 (D.D.C. 1982) (observing, in a constitutional suit against private non-profit working to support the U.S. Department of Agriculture, that "The *Blum* decision erected a considerable hurdle for plaintiffs seeking to establish state action"); *Karaahmetoglu v. Res-Care, Inc.*, 480 F. Supp. 2d 183, 188 (D.D.C. 2007) (holding that a private actor providing residential and rehabilitation services for voluntarily committed developmentally disabled person should not be considered traditional state function); *accord Carey v. Edgewood Mgt. Corp.*, 754 A.2d 951, 957 (D.C. App. 2000) (holding that a Section 8 housing provider was not a state actor).

These authorities compel a conclusion that Defendants are not state actors. Defendants were not providing a traditional exclusive public function by providing low-income housing under the Housing Act, as providing low-income housing is neither a traditional nor an exclusive function of the government. Much like Medicaid's funding of nursing home patients that was considered in *Blum v. Yaretsky*, the Housing Act provides government funding to provide a service that has traditionally been a private-market service. No other basis for finding a "state action" has been alleged or exists in this case.[4] Because Section 1983 claims may be brought against only a state actor, and no Defendant is one, the claim fails as a matter of law and Count I should be dismissed.

---

[4]     Plaintiffs have alleged only one basis for finding that Defendants are state actors—that they were performing a traditional exclusive public function. Plaintiffs have not alleged (and could not allege) any other basis for finding state action. The funding and regulation of Section 8 landlords does not amount to a "governmental nexus," "entwinement," or "symbiosis" sufficient to create a state action. *See Blum*, 457 U.S. at 1011-12, 102 S. Ct. at 2789-90 (rejecting alternative theories of state action that were based on governmental funding and regulation of nursing homes); *Rendell-Baker v. Kohn*, 457 U.S. 830, 839-42, 102 S. Ct. 2764, 2770-72 (1982) (rejecting argument that federal regulation and funding of school amounted to "state action" under alternative theories).

II.     **Counts I and II fail because Plaintiffs do not allege the violation of an enforceable right created by Congress.**

Plaintiffs' Counts I and II must be dismissed because they have failed to allege the violation of an enforceable individual right created by Congress. To bring either a § 1983 claim or a direct cause of action, Plaintiffs must rely on an explicit individual right created by Congress. *Flagg Bros.*, 436 U.S. at 155-56; *Lugar*, 457 U.S. at 930, 102 S. Ct. at 2750. "In order to seek redress through § 1983, . . . a plaintiff must assert the violation of a federal *right,* not merely a violation of federal *law.*" *Blessing v. Freestone,* 520 U.S. 329, 340-41, 117 S. Ct. 1353, 1359 (1997) (emphasis in original). An enforceable individual right cannot be created by a regulation alone. *See Alexander v. Sandoval*, 532 U.S. 275, 289-91, 121 S. Ct. 1511, 1521-22 (2001) ("[I]t is most certainly incorrect to say that language in a regulation can conjure up a private cause of action that has not been authorized by Congress. Agencies may play the sorcerer's apprentice but not the sorcerer himself."); *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283, 122 S. Ct. 2268, 2275 (2002) (confirming that individual rights analysis from implied right of action cases applies equally to § 1983 claims).

To determine whether Congress created an enforceable individual right, courts analyze the language of the statute at issue: "[W]here the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action." *Gonzaga*, 536 U.S. at 286, 122 S. Ct. at 2277 (quotations omitted). For a statute to create private rights, its text must be phrased in terms of the persons benefited. *E.g., Cannon v. University of Chicago,* 441 U.S. 677, 689, 99 S. Ct. 1946, 1953 (1979). "[U]nless Congress speaks with a clear voice, and manifests an unambiguous intent to confer individual rights, federal funding provisions provide no basis for private enforcement by § 1983." *Gonzaga*, 536 U.S. at 273-74, 122 S. Ct. at 2270 (citations

omitted).  "Focusing on the terms and structure of a statute also ensures fealty to the proper

judicial role." *Bauer v. Marmara*, 774 F.3d 1026, 1033 (D.C. Cir. 2014).  "Raising up causes of

action where a statute has not created them may be a proper function for common-law courts, but

not for federal tribunals." *Alexander,* 532 U.S. at 287, 121 S. Ct. at 1520.

Plaintiffs have alleged that Defendants violated 42 U.S.C. §§ 1437a(a)(1).  That section

reads as follows:

> **(1)**     Dwelling units assisted under this chapter shall be rented
> only to families who are low-income families at the time of their
> initial occupancy of such units. Reviews of family income shall be
> made at least annually. . . .  a family shall pay as rent for a
> dwelling unit assisted under this chapter . . . the highest of the
> following amounts, rounded to the nearest dollar:
>
> > **(A)**     30 per centum of the family's monthly
> > adjusted income;
> >
> > **(B)**     10 per centum of the family's monthly
> > income; or
> >
> > **(C)**     if the family is receiving payments for
> > welfare assistance from a public agency and
> > a part of such payments, adjusted in
> > accordance with the family's actual housing
> > costs, is specifically designated by such
> > agency to meet the family's housing costs,
> > the portion of such payments which is so
> > designated.

42 U.S.C.A. § 1437a(a)(1).  This section is also known as the Brooke Amendment.

The Brooke Amendment creates an individual right for tenants to enforce, through the

remedy offered by Section 1983, the limit on rent, including utility allowances, to 30% of their

income. *Wright v. City of Roanoke Redevelopment & Housing Auth.,* 479 U.S. 418, 429, 107 S.

Ct. 766, 773 (1987).  In *Wright*, a governmental landlord charged tenants for a surcharge of

excess utility consumption without including it in the calculation of the tenants' rents.  *Id.* at 421,

107 S. Ct. at 769.  This action violated express language of the Housing Act, § 1437a, which required landlords to limit the required payment by the tenant, including utilities, to 30% of his or her income.  *Id.* at 430-31, 107 S. Ct. at 773-74.  The Court held that the statutory requirement that the surcharges be included in the rent calculation was enforceable by the tenants through the remedy afforded by 42 U.S.C. § 1983.  *Id.*

Neither *Wright* nor the Brooke Amendment creates an enforceable right for all alleged violations of 42 U.S.C. § 1437a or related regulations.  For example, in *Caswell v. City of Detroit Hous. Comm'n*, 418 F.3d 615, 620 (6th Cir. 2005), a Section 8 voucher tenant's rent subsidy was terminated while eviction proceedings were pending, which violated 24 CFR § 982.311(b), a HUD regulation.  Arguing that he was overbilled as a result of the inappropriate termination of his subsidy, the tenant brought a claim under 42 U.S.C. § 1983 and relied on *Wright* to support his claim.  The Sixth Circuit rejected this claim, concluding that it could "find no provision under 42 U.S.C. § 1437 *et seq.*, which, in clear and unambiguous terms, confers a particular right upon the tenant to subsidies after the landlord initiates eviction proceedings."  *Id.* at 621.  As *Caswell* demonstrates, a purported right under § 1437a, or allegedly deriving from the Brooke Amendment, must be founded in the language of the statute.  *See also Johnson v. City of Detroit*, 446 F.3d 614, 627 (6th Cir. 2006) (provisions of § 1437a dealing with housing quality standards did not create enforceable right); *Green v. Konover Residential Corp.*, 1997 WL 736528, at *8 (D. Conn. Nov. 24, 1997) (commenting that *Wright* does not address whether a private action could be maintained against a private landlord, as opposed to a public housing authority).

Justice O'Connor, dissenting in *Wright* and joined by three other justices, cautioned against interpreting the Court's decision as creating enforceable rights in HUD utility allowance regulations:

> I am concerned, however, that lurking behind the Court's analysis may be the view that, once it has been found that a statute creates some enforceable right, *any* regulation adopted within the purview of the statute creates rights enforceable in federal courts, regardless of whether Congress or the promulgating agency ever contemplated such a result. Thus, HUD's frequently changing views on how best to administer the provision of utilities to public housing tenants becomes the focal point for the creation and extinguishment of federal 'rights.'  Such a result, where determination of § 1983 'rights' has been unleashed from any connection to congressional intent, is troubling indeed.

*Wright*, 479 U.S. at 438, 107 S. Ct. at 778 (O'Connor, J., dissenting).

Here, Plaintiffs' allegations do not amount to a violation of the text of the Brooke Amendment.  Plaintiffs allege that Defendants failed to provide notice of utility allowance changes in the form and failed to increase utility allowances as required by certain HUD regulations—24 CFR §§ 965.502, 965.507, and 965.508.  *See* Compl., ¶¶ 48, 52, 53, 92-93.  The Brooke Amendment, however, contains no mention of the process for changing utility allowances.  *See* 42 U.S.C. § 1437a(a)(1).  Certainly, the Amendment does not unambiguously create individual rights to notice in a certain form or for the market increases allegedly required by 24 CFR § 965.507.  Those requirements are contained only in regulations which cannot "conjure up a private cause of action that has not been authorized by Congress."  *Alexander*, 532 U.S. at 289-91, 121 S. Ct. at 1521-22.  Thus, unlike in *Wright*, Plaintiffs do not allege a violation of a particular right that Congress intended to be enforceable through 42 U.S.C. § 1983 or directly under the statute.

In addition to the alleged notice problems, Plaintiffs also allege that the utility allowances are insufficient as compared to actual utility consumption, *see* Compl. ¶¶ 55-59, and allowances given under the Housing Choice Voucher Program, *see* Compl., ¶ 49.  These allegations also fail to identify an enforceable right under the Brooke Amendment.  The statute does not unambiguously confer to Plaintiffs an enforceable right to a utility allowance that matches actual

consumption or allowances under the Housing Choice Voucher Program.  In fact, the regulatory

scheme recognizes that utility allowances will not necessarily match actual expenditures or

amounts given in other programs.  The utility allowance is not a strict calculation of 30% of

income, but is based on an approximation of "the monthly cost of a reasonable consumption."

Owners may calculate it by an approximation of past consumption, or through other methods that

do not account at all for the tenant's actual consumption, including the engineering method.  The

standard focuses on an "energy-conservative household of modest circumstances," which can

result in a lower or higher allowance than the actual consumption of the unit.  24 CFR § 5.603.

The landlord must only use of the approved methods and consider the required factors.  Plaintiffs

do not and cannot allege that Defendants failed to follow these requirements in this case;

Plaintiffs only allege that Defendants used the engineering methodology, an approved method.

Compl., ¶ 49.  They have thus failed to allege an enforceable right created by Congress.

III.    **Plaintiffs' Counts II and III fail because there is no implied remedy under the United States Housing Act or the Low Income Housing Tax.**

Counts II and III, in which Plaintiffs assert causes of action directly under the 42 U.S.C. §

1437a (the "Brooke Amendment" or "Section 1437a") and 26 U.S.C. § 42 ("Section 42") fail

because Congress did not create an implied right of action under either statute.

The inquiry into whether a statute confers a private cause of action upon Plaintiffs

"necessarily focuses on Congress' intent in enacting [the statute]."  *Cuba Soil & Water*

*Conservation Dist. v. Lewis,* 527 F.3d 1061, 1063 (10th Cir. 2008).  "In order to establish an

implied private right of action under a federal statute, a plaintiff bears a relatively heavy burden

of demonstrating that Congress affirmatively or specifically contemplated private enforcement

when it passed the relevant statute."  *Samuels v. D.C.*, 770 F.2d 184, 194 (D.C. Cir. 1985).  The

courts must "interpret the statute Congress has passed to determine whether it displays an intent

to create not just a private right but also a private remedy," because "private rights of action to enforce federal law must be created by Congress." *Alexander,* 532 U.S. at 286, 121 S. Ct. at 1519-20.  Absent congressional intent to create both a right and a remedy in favor of a plaintiff, a cause of action does not exist.  *Id.* (holding that without the statutory intent to create a private right and remedy, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.").

The text of 42 U.S.C. § 1437a (a)(1), the statute relied upon by Plaintiffs in Count II, provides no indication that Congress intended it to create a right and remedy for Plaintiffs that matches their allegations; *i.e.*, insufficient notice and allowance amounts that fail to match their actual consumption or the subsidies in the Section 8 voucher program.  The Brooke Amendment simply states that the tenant's rent cannot exceed 30% of his or her income.  Congress intended the amendment to include an allowance for utilities, *see Wright*, 479 U.S. at 429, 107 S. Ct. at 773, but Congress did not express any intentions regarding the required form or contents of notices pertaining to utility allowance.  Nor does the Brooke Amendment require that the allowance reflect the actual consumption of tenants or mirror subsidies given under other housing programs.

Courts considering claims brought under Section 1437a have concluded that it does not provide for a private implied right of action.  *See McNeill v. New York City Hous. Auth.*, 719 F. Supp. 233, 247 (S.D.N.Y. 1989) (rejecting private cause of action brought by tenants under Brooke Amendment and observing that "[n]owhere does the legislative history indicate that tenants were to have private rights of action against private landlords[,]" and that "Congress' intent to allow the private right of action sought here also does not appear in the language or structure of the statute, or in the circumstances of or subsequent to its enactment"); *Johnson v.*

*City of Detroit*, 446 F.3d at 627 (provisions of § 1437a dealing with housing quality standards did not implied right of action).  The *Wright* decision itself, which only found a cause of action under § 1983, suggests that there is no private remedy directly under the Brooke Amendment. 479 U.S. at 427, 107 S. Ct. at 772 (discussing other federal statutes that provide "private judicial remedies" and observing: "There is nothing of that kind found in the Brooke Amendment or elsewhere in the Housing Act").

Count IV similarly fails because 26 U.S.C. § 42 does not authorize or otherwise give a low-income tenant a private cause of action against Defendants.  Section 42 is the sole basis for the claim.  Plaintiffs allege that Defendants reduced the utility allowances at Capitol Gateway in two separate instances: once in or around December 2013, and a second time in early 2015. Compl. ¶ 105.  On both occasions it is alleged that Defendants failed to provide notice of the change to the D.C. Housing Finance Agency, which is the state/local housing credit agency tasked with implementing the LIHTC program in the District of Columbia.  *Id.* ¶ 106.  Plaintiffs allege that this failure violated the LIHTC Program, Section 42,[5] and its implementing regulations under 26 C.F.R. § 142.10.  *Id.*

The Low Income Housing Tax Credit ("LIHTC") Program, codified under 26 U.S.C. § 42, is a federal program administered by state housing agencies that provides tax credits to developers of low-income housing.  In order to receive tax credits, housing developments must enter into long-term extended commitments to offer low-income housing to qualified persons. An "extended low-income housing commitment" is defined in 26 U.S.C. § 42(h)(6)(B) as an agreement between the taxpayer (here, East Capitol) and the housing credit agency (here, the D.C. Housing Finance Agency).

---

[5]     Although Plaintiffs' Complaint does not rely upon a specific provision of Section 42, it is presumed that Plaintiffs are relying upon 42(g)(2) regarding rent-restricted units.

The provisions of Section 42 provide low-income tenants with neither a federal right nor remedy.  Section 42 does not focus on Plaintiffs' alleged benefited class of low income housing tenants.  Rather, Section 42 is structured to regulate the taxpayers (i.e. the property owners) and the agencies tasked with regulating those taxpayers (i.e. the IRS and the housing credit authorities).  As a result, "…the benefits conferred upon low-income residents through the tax credit program are tangential to the agreement between the taxpayer and the housing credit authority."  *Mendoza v. Frenchman Hill Apartments Ltd. P'ship*, 2005 WL 6581642, at *1 (E.D. Wash. Jan. 20, 2005).

Courts that have considered whether Section 42 provides for a private cause of action unanimously have held that none exists.  *Jardin de las Catalinas Ltd. P'Ship v. Joyner,* 861 F. Supp. 2d 12, 21 (D.P.R. 2012) (noting that Section 42 "failed to confer individual rights" and "did not create a remedy under Federal Law"); *Nordbye v. BRCP/GM Ellington,* 2008 WL 687083, at *3 (D. Or. Mar. 10, 2008) (holding that Section 42 "itself contains no . . . right of action"); *Pendleton Pines Assocs., L.L.C. v. Ledic Mgmt., L.L.C.,* 354 F. Supp. 2d 775, 777 (W.D. Tenn. 2005) (noting that both parties agree that there is no provision for enforcement or penalty that confers a private right of action under Section 42); *Johnson v. City Front Partners, LLC*, 2014 WL 823900, at *1 (D. Utah Mar. 3, 2014) ("Section 42 does not grant or authorize a private right of action[.]"); *Mendoza,* 2005 WL 6581642, at *6 (holding that no individual rights exist under Section 42).  The Court should adopt the reasoning of these courts and hold that there is no private implied right of action under Section 42.

Neither Section 1437a nor Section 42 provides for a right and remedy under federal law in favor of Plaintiffs, and a private cause of action under these statutes does not exist.

Accordingly, Plaintiffs fail to state a claim under Counts II and III, and the counts should be dismissed.

**IV.    The Court Should Decline to Exercise Jurisdiction Over the State-law Based Causes of Action.**

Federal courts are of limited jurisdiction and possess only the power conferred by the United States Constitution and federal statutes.  The plaintiff bears the burden of establishing jurisdiction.  *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377, 114 S. Ct. 1673, 1675 (1994).  Plaintiffs rely on 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343 (for violations of the Constitution under color of state law).  Under these sections, the Court would have original jurisdiction over Plaintiffs' first three counts, which seek to raise federal questions.  For the reasons described above, Plaintiffs have failed to state a cause of action for these claims.

Plaintiffs' other claims allege breaches of contract:  a breach of specific provisions of Plaintiffs' leases and a breach of the Indenture.  Because the contract claims do not raise a federal question over which the Court has original jurisdiction, jurisdiction over those claims must come from 28 U.S.C. § 1367.  Subsection (a) of that statute provides that a district court has "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case of controversy under Article III of the United States Constitution."

Under 28 U.S.C. § 1367(c)(3), the Court is authorized to decline to exercise supplemental jurisdiction when the Court has "dismissed all claims over which it has original jurisdiction." Whether to exercise supplemental jurisdiction over a state law claim is a matter left to the sound discretion of the district court.  *Gary v. Long*, 59 F.3d 1391, 1400 (D.C. Cir. 1995).  "[I]n the usual case in which all federal-law claims are dismissed before trial, the balance of factors to be

considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Shekoyan v. Sibley Int'l*, 409 F.3d 414, 424 (D.C. Cir. 2005) (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7, 108 S. Ct. 614, 619 (1988)).  It is well settled that "needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *Edmondson v. Alban Towers Tenants Ass'n.,* 48 F.3d 1260, 1266 (D.C. Cir. 1994).

Here, the Court should decline to exercise supplemental jurisdiction over the state-law claims.  Because the federal claims should be dismissed, the remaining claims will sound exclusively in state law.  Maintaining state-law claims in this Court in the absence of any related federal-question claims would result in an inefficient use of this Court's time and resources on claims that have no basis in federal law.  The claims should be resolved in a court of the state whose laws are being interpreted.  As such, this Court should decline to exercise supplemental jurisdiction over the state-law claims and dismiss the Complaint in its entirety.[6]

---

[6]       Should this Court permit Plaintiffs' first or second cause of action under 42 U.S.C. § 1437 to go forward, Plaintiffs' claim for violation of their leases should be dismissed.  When a breach of contract claim is duplicative of another cause of action and will afford no greater relief, the court may dismiss the claim as cumulative.  *E.g.*, *Hamdy v. County of Niagara*, 2007 WL 295325, at *2 (W.D.N.Y. Jan. 30, 2007) (dismissing plaintiff's breach of contract claim as duplicative of plaintiff's remaining claims, where the breach of contract cause of action would afford no greater relief than any other claim alleged).  Here, Count IV alleges violation of the lease requirement that Defendants comply with HUD regulations.  These alleged violations and subsequent damages are identical to the allegations supporting Plaintiffs' Count I and II, *see* Compl. ¶ 92, 94, 96, and should be dismissed.

**V.      Plaintiffs Fail to State a Claim Under the Indenture Because It Does Not Grant Them Authority to Challenge the Utility Allowance Revisions.**

Plaintiffs allege contractual violations of the Indenture and claim the right to enforce the it as third-party beneficiaries under Count V.  This claim fails as a matter of law because the third-party beneficiary status is limited to a provision of the indenture that is not at issue in this case.  Count V should be dismissed.

To enforce the Indenture, Plaintiffs, as non-parties, must demonstrate that the parties to the agreement intended to allow third-party enforcement of the contract, as evidenced by the intent of the parties or language of the contract.  *Edwards v. Aurora Loan Services, LLC*, 791 F. Supp. 2d 144, 150 (D.D.C. 2011).   "The parties to a contract must 'directly and unequivocally intend to benefit a third-party in order for that third-party to be considered an intended beneficiary.'"  *Bowhead Info. Tech. Services, LLC. v. Catapult Tech. Ltd.*, 377 F. Supp. 2d 166, 171 (D.D.C. 2005) (quoting *Barnstead Broadcasting Corp. v. Offshore,* 886 F. Supp. 874, 879 (D.D.C.1995)).  The parties' mere knowledge or awareness that a contract may benefit a third-party is insufficient, without more, to demonstrate an intent to confer a benefit on the third-party. *Id.*  For government contracts, the Supreme Court has admonished courts against inferring that a third-party has authority to enforce it where the "contract simply incorporates statutorily required terms and otherwise fails to demonstrate any intent to allow beneficiaries to enforce those terms." *Astra USA, Inc. v. Santa Clara County, Cal.*, 563 U.S. 110, 119 n.4, 131 S. Ct. 1342, 1348  (2011).  "Permitting such a suit, it is evident, would allow third parties to circumvent Congress's decision not to permit private enforcement of the statute." *Id.* (citations and quotations omitted).

Plaintiffs are not parties to the Indenture.  The parties are East Capitol and the D.C. Department of Housing and Community Development.  Compl. ¶ 117 at 28.  A complete copy of

the Indenture is attached to this Memorandum.  Exhibit 1.[7]  Plaintiffs quote one provision of the

Indenture to claim third-party-beneficiary status.  *Id.* ¶ 119 at 28 ("Specifically, the Indenture

provides that 'in addition to all other remedies provided by law or in equity, the tenants either

individually or collectively, shall be entitled to enforce, upon Owner, specific performance

requirements of' the Article governing rent restrictions.").  However, Plaintiffs omit necessary

terms of the Indenture that limit the tenants' enforcement of the Indenture to a specific covenant

of East Capitol:  the covenant to set aside certain units for low-income housing.  Indenture (Ex.

1) Art. III at 3-4.  The covenant requires East Capitol to maintain 100% of its units as rent

restricted and Low-Income Units and occupied by "households whose income is 60% or less of

Area Median Gross Income, as described in the [IRS] Code."  Indenture (Ex. 1) Art. III at 3-4.

      This third-party enforcement right upon which Plaintiffs rely to claim status as third-party

beneficiaries does not "directly and unequivocally" establish their right to enforce utility

allowance procedural requirements or calculations.  The narrow obligation tenants are entitled to

enforce—the set-aside requirement—has nothing do with utility allowance procedures or

calculations.  Plaintiffs have not alleged that East Capitol failed to maintain a sufficient number

of units as rent restricted or that units are being rented to non-qualifying occupants.  Plaintiffs,

instead, seeks to enforce the Indenture based on the form of notice and calculation of the utility

allowance revisions in connection with the rent-restricted units Plaintiffs occupy.

      The parties could have broadened the tenants' enforcement rights by referring

specifically to utility allowance or rent claims or generally to all of East Capitol's obligations

under the Indenture or the LIHTC Regulations.  The drafters of the Indenture demonstrated how

---

[7]     Courts may consider documents mentioned by or incorporated into the complaint when ruling on Rule 12(b)(6) motions to dismiss.  *See Malek v. Flagstar Bank,* 70 F. Supp.3d 23, 27 (D.D.C. 2014).  Plaintiffs' Complaint references the Indenture, and this Court may consider in relation to this motion.

to describe a broader set of rights of enforcement.  In the same section in which the tenants were granted limited third-party-beneficiary rights, the parties described the more expansive scope of DHCD's rights, stating that DHCD "shall be entitled to enforce specific Owner performance obligations under this Indenture" and that enforcement was available for "any breach of the conditions and restrictions contained herein."  Indenture (Ex. 1) Art. VIII at 7.  Instead of giving tenants similar broad enforcement rights, the parties to the Indenture defined the tenants' enforcement rights as limited to seeking "specific performance" of the set-aside requirement.[8] Plaintiffs' allegation that the Indenture creates a right to enforce regulations is not the consistent with the principles of contract interpretation and would expand the rights of the tenants far beyond those created by the agreement.  *Debnum v. Crane Co.*, 976 A.2d 193, 197 (D.C. 2009) (explaining that the object of contract interpretation is to "determine what a reasonable person in the position of the parties would have thought the disputed language meant" and give "a reasonable, lawful, and effective meaning to all [the contract's] terms").  The parties to the Indenture did not intend to grant tenants any broader set of enforcement rights, such as the right to use the contract as a means to challenge utility allowances.  The tenants' right to enforce the "specific performance requirements of Article III of [the] Indenture" does not include the claims asserted through Count V.  Count V should be dismissed for Plaintiffs' failure to state a claim.

### VI.   Plaintiffs Have Failed to Establish Any Cause of Action Against Defendants A&R and Kettler, as Managing Agents.

Defendants A&R and Kettler, in the role of former and current managing agents respectively, may not, as a matter of law, be held liable under any of Plaintiffs' causes of action.

---

[8]   The tenants' remedy under the Indenture is limited to specific performance.  Even in a case in which they sought to enforce rights afforded to them under the Indenture, they could not maintain an action for damages.

The agent of a disclosed principal cannot be held personally liable for acts within the scope of his agency. *Rittenberg v. Donohoe,* 426 A.2d 338, 341 (D.C.1981). "[A]n agent is not personally liable on a contract it executes on behalf of a principal so long as it identifies the principal and discloses the agency relationship." *Ridgewells Caterer, Inc. v. Nelson*, 688 F. Supp. 760, 762 (D.D.C. 1988). The "requirement of disclosure is satisfied if, at the time of the transaction, the other party had notice that the agent is acting for a principal and of the principal's identity." *Id.*

A&R and Kettler were disclosed managing agents. A&R served as the managing agent at Capitol Gateway from the beginning of Plaintiffs' tenancies until 2014. Compl. ¶ 10. Kettler assumed the role of managing agent at Capitol Gateway in mid-2014, and continues to act in this role to the present day. *Id*. ¶ 11. Plaintiffs were notified of the existence of the owner of the property, *i.e.* East Capitol, through their leases, which identified East Capitol as the owner and principal. Plaintiffs' Complaint describes East Capitol as the record owner of the units at Capitol Gateway. *Id.* ¶ 9. As acknowledged managing agents of a disclosed principal, A&R and Kettler must be dismissed as defendants.

Moreover, A&R and Kettler should be dismissed because Plaintiffs' allegations only describe legal duties and allege wrongdoing by the owner, East Capitol. With regards to Plaintiffs' first and second causes of action alleging violations of 42 U.S.C. § 1437a(a)(1), and its implementing regulations at 24 C.F.R. § 965.502-965.508, Plaintiffs assert that "[t]he owner must ensure that all residents receive notice of any revision to utility allowances at the property at least 60 days before the proposed effective date of the revision," and that "the owner must review its utility allowances at least annually and make revisions reasonably required to continue to adhere to the above standards." *Id.* ¶¶ 18, 20. With regards to the third cause of action for

violation of the Low-Income Housing Tax Credit Program, Plaintiffs allege that "the LIHTC regulations require owners to conduct an annual review of utility allowance." *Id.* ¶¶ 22, 26. Plaintiffs' cause of action regarding their status as third party beneficiaries to the Indenture expressly acknowledges that the agreement was between East Capitol and the DHCD.  Compl. ¶ 117.  Neither A&R nor Kettler is a party to the Indenture.  Ex. 1.  Plaintiffs name A&R and Kettler as Defendants, but the specific allegations of wrongdoing in the Complaint are directed solely to East Capitol.  Thus, the allegations fail to state a claim against A&R and Kettler.

## CONCLUSION

Based upon the foregoing arguments and authorities, Defendants respectfully request that this Court grant its Motion to Dismiss Plaintiffs' Complaint and enter an Order dismissing all claims with prejudice.

Dated: December 31, 2015          Respectfully Submitted,

                          /s/David G. Sommer
                          David G. Sommer, Esq. (Md. Fed. Bar No. 27581)
                          James D. Bragdon, Esq. (D.C. Bar No. 1017743)
                          Gallagher Evelius & Jones LLP
                          218 N. Charles Street, Suite 400
                          Baltimore, MD  21201-4033
                          (410) 727-7702
                          *Attorney for Defendants East Capitol Family Rental, L.P. & A&R Management, Inc.*


                          O'Kelly McWilliams III, Esq. (Bar No. 448053)
                          GORDON & REES LLP
                          1300 I Street, NW, Suite 825
                          Washington, DC 20005
                          T: 202.399.1009
                          F: 202.800.2999
                          E: OMcWilliams@gordonrees.com
                          *Attorneys for Defendant Kettler Management, Inc.*