UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MILDRED KINARD *et al.*,<br><br>   *Plaintiffs*,<br> v.<br><br>EAST CAPITOL FAMILY RENTAL, L.P.<br>*et al.*,<br><br>   *Defendants*. | Civil Action No. 15-1935 (TJK) |

## MEMORANDUM OPINION

Plaintiffs in this class action are tenants of a low-income housing development in the District of Columbia. They allege that Defendants, management companies overseeing the development, violated federal laws by adjusting their utility allowances—rent reductions that should reflect reasonable utility use—improperly and without adequate notice. After lengthy negotiations, the parties reached a settlement agreement under which the named plaintiffs and other class members will receive both monetary and non-monetary relief. In November 2018, the Court preliminarily approved the settlement agreement and conditionally certified the class, and in April 2019, it held a fairness hearing. Before the Court is the parties' Joint Motion for Final Certification of Class for Settlement Purposes and for Approval of Class Action Settlement. ECF No. 35. For the reasons explained below, the motion will be granted.

## I. Background

### A. Factual and Procedural History

Capitol Gateway Family Rental ("Capitol Gateway") is a low-income housing development in the District of Columbia, which includes 86 family rental units. ECF No. 1 ("Compl.") ¶¶ 1, 27–28. Defendant East Capitol Management Family Rental, L.P., ("East

Capitol") owns a portion of Capitol Gateway. *Id.* ¶ 9. Some of the units in Capitol Gateway—61 of the 86—are designated as low-income housing, and therefore must be operated in accordance with regulations governing the Low-Income Housing Tax Credit (LIHTC) Program. *Id.* ¶¶ 22, 29, 32. In addition, according to Plaintiffs, East Capitol entered into a "Regulatory and Operating Agreement" ("R&O Agreement") with the District of Columbia Housing Authority (DCHA), under which it agreed to operate those units subject to regulations promulgated by the U.S. Department of Housing and Urban Development ("HUD"). *Id.* ¶¶ 29, 30. Defendant A&R Management, Inc., served as the managing agent at Capitol Gateway from 2007 until mid-2014, when Defendant Kettler Management, Inc., took over. *Id.* ¶¶ 10–11. Plaintiffs are past and present residents of the low-income units in Capitol Gateway. *Id.* ¶¶ 5–8, 34. Mildred Kinard began living there in 2008, and the other named plaintiffs started the year before that. *Id.* ¶¶ 5–8. The proposed class consists of all tenants who were residents of Capitol Gateway in one of the low-income units at any time between January 1, 2014 and December 31, 2015. ECF No. 32-2 ("Settlement Agreement") ¶ 8(e).

Plaintiffs allege that, according to their lease agreements and the R&O Agreement, East Capitol had to provide them a utility allowance in the form of a rent reduction. Compl. ¶ 36. Prior to 2013, their utility allowances remained constant. *Id.* ¶ 46. Around October 2013, however, Defendants notified them that their allowances were being reduced that December. *Id.* ¶ 47. Plaintiffs allege that the notice failed to adequately describe the reason for the reduced allowance and did not give them an opportunity to comment about it or request individual relief from it. *Id.* ¶ 48. Moreover, Plaintiffs assert, less than two years later the same thing happened to them again. *Id.* ¶¶ 51–52. More specifically, Plaintiffs allege that in early 2015, some tenants received written notice either immediately before or after a second reduction to their allowances,

and some received no notice at all. *Id.* ¶ 52. And once again, the notice that *was* provided to some Plaintiffs was deficient because it failed to describe the reason for the reduction or provide an opportunity for them to comment or request individual relief. *Id.* ¶ 53. Finally, Plaintiffs contend that, starting in December 2013, the amounts of their reduced individual allowances were unlawful under the United States Housing Act and its implementing regulations. *See id.* ¶¶ 15, 59.

In November 2015, Plaintiffs filed this class action under Federal Rule of Civil Procedure 23(b)(2) and (b)(3), challenging both Defendants' alleged failure to provide proper notice of the reduced utility allowances and the reduced allowances themselves. *Id.* ¶ 82. In their five-count complaint, Plaintiffs assert that Defendants violated 42 U.S.C. § 1983; the United States Housing Act of 1937, 42 U.S.C. §§ 1437a and 1437a(a)(1); the Low-Income Housing Tax Credit Program, 26 U.S.C. § 42; Plaintiffs' lease agreements; and the Indenture of Restrictive Covenants for Low-Income Housing Tax Credits. *Id.* ¶¶ 89–120.

The next month, Defendants moved to dismiss the complaint. ECF No. 11. Following briefing on the motion, the parties agreed to mediate the case with the assistance of Magistrate Judge G. Michael Harvey. ECF No. 23. In advance of mediation, the parties exchanged informal discovery and engaged in extended settlement negotiations. ECF No. 32-1 at 12. Just when those negotiations appeared to be breaking down, the parties accepted one of two alternative "mediator's proposals" suggested by Judge Harvey, which led to a settlement in principle in March 2017. *Id.* The parties then negotiated and memorialized a formal settlement agreement, which they executed over a year later, in May 2018. *See id.* at 5.

**B.     The Settlement Agreement**

In June 2018, the parties jointly moved for preliminary approval of the settlement agreement, conditional certification of the class for purposes of settlement, appointment of class

counsel, approval of notice to the class, and for the scheduling of a fairness hearing. ECF No. 32. Under the terms of the settlement agreement, Defendants have agreed to designate $100,000 to compensate the named plaintiffs and other class members. Settlement Agreement ¶ 8(r). Of that $100,000, the agreement allocates $15,000 for fees for Plaintiffs' counsel and $5,000 for service awards for each of the four named plaintiffs. *Id.* ¶¶ 11–12. The remaining amount is available for distribution to class members according to a formula that sets individualized awards based on the length of time the class member lived in Capitol Gateway and size of the class member's unit. *Id.* ¶ 16. The settlement agreement also includes non-monetary relief for class members. *Id.* ¶ 21. Defendants have agreed to adjust class members' utility allowances for two years according to another formula, and to do so subject to agreed-upon notice provisions. *Id.* ¶¶ 21–22. For their part, class members have agreed to release all claims in the complaint and all claims relating to the calculation of utility allowances by Defendants during those two years. *Id.* ¶¶ 23, 57.

The Court preliminarily approved the settlement agreement and conditionally certified the class in November 2018. ECF No. 33. Pursuant to the terms of the settlement agreement, on December 18, 2018, Defendants provided the claims administrator identifying and contact information for the 64 members of the class. ECF No. 35-5 ¶ 3. On January 11, 2019, the claims administrator mailed a "Notice to Class of Proposed Settlement" and a claim form to the last known address of each class member. *Id.* ¶ 4. The notice form provided an explanation of the basis for the lawsuit and of the class members' rights with respect to the suit, including the right to opt out of the suit and to object to the settlement terms. *See* ECF No. 32-3. The notice also informed class members that they had to complete an enclosed claim form and return it by a date certain to participate in the settlement. *Id.* at 5. Class members also received separate,

4

individualized notices with a preliminary calculation of the award they would receive under the settlement. *Id.* at 4–5. For each notice returned as undeliverable, the claims administrator tried to locate an updated address for the class member and re-sent the notice to any identified updated address. ECF No. 35-5 ¶ 5. By February 22, 2019—the deadline for a class member to opt-out from the settlement, object to the settlement, or challenge the monetary amount that he or she would receive—the claims administrator had received no opt-outs, objections, or challenges.[1] *Id.* ¶¶ 8–10. On February 25, 2019, the claims administrator mailed reminder postcards to the 19 class members who had not returned a claim form by then. *Id.* ¶ 6. By March 22, 2019—the deadline for class members to submit claim forms—the claims administrator had received forms from 57 out of 64 class members. *Id.* ¶ 7.

### C. Joint Motion for Final Approval and Fairness Hearing

In March 2019, the parties jointly moved for final certification of the class and for approval of the settlement. ECF No. 35. As required by Federal Rule of Civil Procedure 23(e), the Court held a fairness hearing on April 10, 2019, which was attended by counsel for the parties and one of the named plaintiffs. As described above, although class members had been advised of their right to appear at the hearing and to object to the settlement, no objectors appeared.

## II. Legal Standards

### A. Class Certification

When certifying a class for settlement purposes, the Court must consider whether Plaintiffs have established "that each of the elements of Rule 23(a) are met and that the class is

---

[1] The claims administrator did receive one possible challenge to a class member's proposed settlement payment, but it was determined to be untimely and was denied for that and other reasons. ECF No. 35-5 ¶ 10.

maintainable pursuant to one of Rule 23(b)'s subdivisions." *Radosti v. Envision EMI, LLC*, 717 F. Supp. 2d 37, 50 (D.D.C. 2010). Under Rule 23(a), Plaintiffs must establish that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims and defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. These requirements are generally referred to as "numerosity, commonality, typicality, and adequacy of representation." *Cohen v. Chilcott*, 522 F. Supp. 2d 105, 113 (D.D.C. 2007).

In addition, the parties have moved the Court to certify the class under Rule 23(b)(3), which requires Plaintiffs to show that "questions of law or fact common to class members predominate over any questions only affecting individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *See* ECF No. 35-1 ("Joint Mot.") at 19. "These requirements are referred to as predominance and superiority." *Chilcott*, 522 F. Supp. 2d at 113.

B.     **Final Approval of Class Settlement**

Rule 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled . . . only with the court's approval" and upon its finding that the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In evaluating proposed class action settlements under Rule 23(e), courts in this Circuit generally consider the following factors: (1) whether the settlement is the result of arm's-length negotiations; (2) the terms of the settlement in relation to the strength of the plaintiffs' case; (3) the status of the litigation at the time of settlement; (4) the reaction of the class; and (5) the opinion of experienced counsel. *See Howard v. Liquidity Servs. Inc.*, No. 14-1183 (BAH), 2018 WL 4853898, at *4 (D.D.C. October 5, 2018); *In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d 100, 104 (D.D.C. 2004). In so doing, the Court

6

"must strike a balance between a rubber stamp approval and the detailed and thorough investigation that it would undertake if it were actually trying the case." *Chilcott*, 522 F. Supp. 2d at 113 (internal quotations omitted). It is the role of the Court to "provide[] a check against settlement dynamics that may lead the negotiating parties—even those with the best intentions— to give insufficient weight to the interests of at least some class members." *In re Vitamins Antitrust Class Actions*, 215 F.3d 26, 30 (D.C. Cir. 2000) (internal quotations omitted). However, there is a "long-standing judicial attitude favoring class action settlements." *In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d at 103 (citing *Mayfield v. Barr*, 985 F.2d 1090, 1092 (D.C. Cir. 1993)). Therefore, "[a]bsent evidence of fraud or collusion, such settlements are not to be trifled with." *Osher v. SCA Realty I, Inc.*, 945 F. Supp. 298, 304 (D.D.C. 1996) (quoting *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992)).

**III.     Analysis**

As explained in more detail below, the Court concludes that the class easily meets the requirements for certification set out in Rules 23(a) and (b)(3). Moreover, it finds that the proposed settlement is fair, reasonable, and adequate under Rule 23(e)(2).

**A.     Class Certification – Rule 23(a)**

**1.     Numerosity**

"There is no specific threshold that must be surpassed in order to satisfy the numerosity requirement," however "courts in this jurisdiction have observed that a class of at least forty members is sufficiently large to meet this requirement." *Taylor v. D.C. Water & Sewer Auth.*, 241 F.R.D. 33, 37 (D.D.C. 2007). Here, the proposed settlement class, defined as "all tenants who were residents at Capitol Gateway Family Rental in one of the Units for any period of time between January 1, 2014[,] to December 31, 2015," includes 64 members. Settlement

Agreement ¶ 8(e). Because the proposed class meets the 40-member threshold recognized in this Circuit, the Court concludes that it satisfies the numerosity requirement of Rule 23(a)(1).

2. **Commonality**

Commonality is satisfied when "there is at least one issue, the resolution of which will affect all or a significant number of putative class members." *Vista Healthplan, Inc. v. Warner Holdings Co. III, Ltd.*, 246 F.R.D. 349, 357 (D.D.C. 2007). "[F]actual variations among class members will not defeat the commonality requirement, so long as a single aspect or feature of the claim is common to all proposed class members." *Bynum v. District of Columbia*, 214 F.R.D. 27, 33 (D.D.C. 2003). The parties contend that class members' claims share multiple questions of law and fact, including:

> (1) whether the Class Members are present or former residents of the Units; (2) whether Defendants provided proper notice of changes to utility allowances; (3) whether Defendants properly calculated the utility allowances; (4) whether the utility allowances that Defendants provided were so low that they do not approximate the reasonable consumption costs of even an energy-conservative household; (5) whether Plaintiffs have asserted a cause of action under the federal or state laws or regulations identified in the Complaint, including the Housing Act and LIHTC statute and regulations; and (6) whether the Defendants' alleged conduct violated the Plaintiffs' leases.

Joint Mot. at 21. The Court concurs that these questions of law and fact are shared by all, or nearly all, class members. Accordingly, the Court concludes that the class satisfies the commonality requirement of Rule 23(a)(2).

3. **Typicality**

"Typicality requires that the claims of the representative be typical of those of the class," *Encinas v. J.J. Drywall Corp.*, 265 F.R.D. 3, 9 (D.D.C. 2010), and is generally satisfied "when the plaintiffs' claims arise from the same course of conduct, series or events, or legal theories of other class members," *In re XM Satellite Radio Holdings Secs. Litig.*, 237 F.R.D. 13, 18 (D.D.C. 2006). "The facts and claims of each class member do not have to be identical to support a

8

finding of typicality; rather, [t]ypicality refers to the nature of the claims of the representative, not the individual characteristics of the plaintiff." *Radosti*, 717 F. Supp. 2d at 52 (internal quotations omitted) (quoting *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 304 (E.D. Mich. 2001)). Here, the claims of the class members arise from the same course of alleged events as the named plaintiffs' claims: Defendants' adjustments of their utility allowances between January 2014 and December 2015, and the notices Defendants provided regarding those adjustments. The claims of the named plaintiffs are therefore typical of those that could be advanced by the class as a whole. For this reason, the Court concludes that the class satisfies the typicality requirement of Rule 23(a)(3).

    **4.    Adequacy**

Rule 23(a)'s adequacy requirement demands that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). "Two criteria for determining the adequacy of representation are generally recognized: 1) the named representative must not have antagonistic or conflicting interests with the unnamed members of the class, and 2) the representative must appear able to vigorously prosecute the interests of the class through qualified counsel." *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997). There is nothing in the record that suggests that the named plaintiffs have a conflict of interest with other members of the class. Moreover, the named plaintiffs will receive an award in accordance with the same formula as the rest of the class, aside from their service awards for pursuing the claims for the class. Accordingly, the Court concludes that the named plaintiffs "'possess the same interest and suffer the same injury' as the class members." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997) (quoting *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)).

Additionally, the Court credits named plaintiffs' counsel's representations that she and her co-counsel have significant experience in civil cases relating to federally-subsidized housing. Joint Mot. at 22. Accordingly, the Court concludes that the named plaintiffs are able to vigorously pursue the interests of the class through qualified counsel.

For these reasons, the Court finds that the class satisfies the adequacy requirement of Rule 23(a)(4).

### B. Class Certification – Rule 23(b)(3)

#### 1. Predominance

Under the predominance requirement, the issues sufficient to establish commonality under Rule 23(a)(2) must predominate over any issues affecting only individual members. *See In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 262 (D.D.C. 2002). "There is no definitive test for determining whether common issues predominate, however, in general, predominance is met when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class members' individual position." *Chilcott*, 522 F. Supp. 2d at 116. "[E]ven the minor differences between the class members—such as the amount of total damages—are susceptible to generalized proof since a common formula is used to calculate the individual damages." *Alvarez v. Keystone Plus Constr. Corp.*, 303 F.R.D. 152, 162 (D.D.C. 2014).

Here, the Court has little trouble concluding that common questions predominate over questions that are individualized for each class member. Plaintiffs' claims that Defendants improperly calculated their utility allowances and failed to provide them proper notice are common to every class member and are capable of being proven or disproven through generalized evidence. The amount of damages allegedly owed to each class member appears to be the only significant non-common issue, but it is susceptible to generalized proof through the

use of a common formula, such as the one proposed here. *See* Settlement Agreement ¶¶ 16–20.
Accordingly, the Court concludes that the predominance requirement is satisfied.

### 2. Superiority

"The superiority requirement ensures that resolution by class action will 'achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable consequences." *Chilcott*, 522 F. Supp. 2d at 117 (omission in original) (quoting *Amchem*, 521 U.S. at 615). Here, given the common issues of law and fact among the class members, the Court concludes that it is efficient and otherwise desirable to litigate those claims in a single action. Further, each class member's share of the settlement fund—with an average award of $955.33, Joint Mot. at 6—is small enough to suggest that most members would not pursue their claims outside of a class action, since the costs of individually prosecuting this litigation would outweigh an individual class member's potential damages. *See Ceccone v. Equifax Info. Servs. LLC*, No. 13-1314 (KBJ), 2016 WL 5107202, at *7 (D.D.C. Aug. 29, 2016). For these reasons, the Court concludes that the superiority requirement is satisfied.

*       *       *

For all the above reasons, the Court finds that the proposed class satisfies the requirements of Rule 23(a) and (b)(3), and with the consent of the parties, the Court will certify the class for settlement purposes.

### C.    Final Approval of the Settlement Agreement – Rule 23(e)

The Court now turns to the proposed settlement agreement. As set forth above, Rule 23(e) requires the Court to consider whether the settlement is "fair, adequate, and reasonable." In doing so, the Court looks to the five factors considered by courts in this Circuit when making such a determination. *See In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d at 104.

### 1. Arm's-Length Negotiations

A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *Id.* "[F]ormal discovery is not . . . necessarily required even for final approval of a proposed settlement" if the parties "demonstrate to the Court at the final approval stage their sufficient appreciation for the merits of the case and [are] able to explain in greater detail the 'significant factual investigation' made prior to the settlement." *Trombley v. Nat'l City Bank*, 759 F. Supp. 2d 20, 26 (D.D.C. 2011) (quoting *In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d at 105). Here, the parties represent that the settlement agreement is the product of serious, extended arm's-length negotiations, during which they "exchanged significant informal discovery to assess the strengths and weakness[es] of their claims and defenses." Joint Mot. at 13. For example, Defendants provided Plaintiffs with "detailed engineering analysis supporting their re-calculated utility allowance figures" and Plaintiffs "gathered water and electric bills for dozens of tenants living in the Units, analyzed these records, and shared the results with Defendants." *Id.* Relying on evidence gathered through informal discovery, the parties "participated in protracted in-person and telephone mediation proceedings with the Honorable G. Michael Harvey" and ultimately accepted one of two alternative "mediator's proposals" offered by Judge Harvey. *Id.*

In light of these representations, the lack of any suggestion of collusion, and the significant time the parties spent negotiating the settlement agreement, the Court has no doubt that it was the product of fair, arm's-length bargaining between experienced counsel. Accordingly, the Court concludes that this factor weighs in favor of approving the settlement agreement.

## 2. Terms of the Settlement Agreement in Relation to the Strength of the Case

Under this factor, courts typically "compare[] the terms of the settlement with the likely recovery plaintiffs would attain if the case proceeded to trial, an exercise which necessarily involves evaluating the strengths and weaknesses of plaintiffs' case." *Stephens v. U.S. Airways Grp., Inc.*, 102 F. Supp. 3d 222, 227 (D.D.C. 2015) (quoting *In re Fed. Nat'l Mortg. Ass'n Secs., Derivative, & "ERISA" Litig.*, 4 F. Supp. 3d 94, 103 (D.D.C. 2013)). "The D.C. Circuit has suggested that this may be the most important factor in evaluating a proposed class settlement." *Ceccone*, 2016 WL 5107202, at *9 (citing *Thomas v. Albright*, 139 F.3d 227, 231 (D.C. Cir. 1998)).

The settlement agreement provides class members with a pro-rata share of the $100,000 settlement fund, after attorney's fees and service awards are distributed, as well as non-monetary relief, including a prospective change to their utility allowances for two years in accordance with an agreed-upon formula. *See* Settlement Agreement. Although both parties represent that they "firmly believe in the merits of their claims," they argue in their joint motion that the terms of the settlement agreement are favorable for both sides, given that "the outcome of the litigation is not certain and attempting to prove liability and defend against these claims w[ould] require a substantial investment of time and resources." Joint Mot. at 14.

At the fairness hearing, counsel for both parties provided further details on their clients' risks if they continued to advance toward a trial. Plaintiffs' counsel acknowledged that her clients would have to overcome several significant hurdles, especially in establishing that class members suffered damages in connection with some of their claims. *See* Rough Tr. at 17:21–

20:18.² Plaintiffs' counsel also discussed the likelihood that, were the case to go to trial, there would be a wide disparity between the damages estimates produced by each party's experts, leading to further uncertainty about Plaintiffs' recovery. *Id.* at 20:4–20:18. Although it is possible that Plaintiffs could have secured a larger recovery if they prevailed at trial, in her view they also faced a substantial risk of winding up with nothing. *See id.* at 19:8–20:3. Similarly, Defendants' counsel noted that their likelihood of success at the dispositive-motion stage was uncertain, and that they, too, wished to avoid the high cost of proceeding further with the litigation. *See id.* at 31:16–32:18. Both parties also emphasized that, even if Plaintiffs had won a judgment, they would not have been guaranteed to receive the prospective, non-monetary relief provided under the settlement agreement. *See id.* at 7:15–17:22; 32:3–32:18.

The Court finds no reason to question the representations by counsel that each side would face these potential difficulties, with no guarantee of success, if the case went to trial. In light of this uncertainty, and the cost of proceeding, the parties have demonstrated that the settlement agreement is fair and reasonable in light of the strength of Plaintiffs' case. Thus, the Court concludes that this factor also weighs in favor of approval.

### 3. Stage of the Proceedings

Under this factor, courts look to "whether counsel had sufficient information, through adequate discovery, to reasonably assess the risks of litigation vis-à-vis the probability of success and range of recovery." *Meijer, Inc. v. Warner Chilcott Holdings Co. III*, 565 F. Supp. 2d 49, 57 (D.D.C. 2008) (quoting *In re Lorazepam & Clorazepate Antitrust Litig.*, No. 99-790 (TFH), 2003 WL 22037741, at *4 (D.D.C. June 16, 2003)). In doing so, courts may weigh favorably

---

² Citations to statements made at the April 10, 2019 fairness hearing are to page numbers in a "rough" transcript provided by the Court Reporter, since the final, certified transcript is not yet available.

settlements that do not "come too early to be suspicious nor too late to be a waste of resources," but rather "at a desirable point in the litigation for the parties to reach an agreement and to resolve these issues without further delay, expense, and litigation." *In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d at 105. As discussed above, this case was filed over three years prior to the Court's preliminary approval of the settlement agreement and after the parties briefed Defendants' motion to dismiss and engaged in informal discovery. Both parties represent that they have now exchanged sufficient information to accurately assess the relative strengths of their claims and defenses, and the risks of continuing the litigation. Joint Mot. at 16–17. The Court credits these representations and concludes that the settlement was reached at an appropriate stage of the litigation. This factor also weighs in favor of approving the settlement agreement.

### 4. Reaction of the Class

A "low number of opt outs and objectors (or purported objectors) supports the conclusion that the terms of the settlement were viewed favorably by the overwhelming majority of class members." *Bynum v. District of Columbia*, 412 F. Supp. 2d 73, 77 (D.D.C. 2006). And the "existence of even a relatively few objections certainly counsels in favor of approval." *In re Lorazepam*, 2003 WL 22037741, at *6. Here, the claims administrator reported no opt-outs or objectors to the settlement agreement; rather, 57 of 64 class members opted into it. ECF No. 35-4 ¶ 6. In light of this high acceptance rate, and the lack of any opt-outs or objectors, the Court concludes that the reaction of the class weighs heavily in favor of approving the settlement.

### 5. Opinion of Experienced Counsel

The opinion of experienced counsel "should be afforded substantial consideration by a court in evaluating the reasonableness of a proposed settlement." *Chilcott*, 522 F. Supp. 2d at 121. Counsel for both parties are experienced in litigation regarding federally-subsidized

15

housing and each has represented that, in their opinion, the settlement is fair, adequate, and reasonable. *See* Rough Tr. at 25:17–28:21; 32:19–33:8; Joint Mot. at 18. The Court credits their opinions and concludes that this factor weighs in favor of approval.

*     *     *

For all the above reasons, the Court finds that the proposed settlement is fair, reasonable, and adequate under Rule 23(e)(2), and on that basis, the Court will approve it.

### D. Service Awards and Attorney's Fees

The parties also request that the Court approve $5,000 individual service awards for the four named plaintiffs to compensate them for being class representatives and their efforts to prosecute this action. ECF No. 32-1 at 7. Courts in this Circuit regularly approve service awards "to compensate plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Radosti v. Envision EMI, LLC*, 760 F. Supp. 2d 73, 79 (D.D.C. 2011). As counsel emphasized at the fairness hearing, the named plaintiffs have invested significant time in prosecuting this case, as reflected by their efforts to retain experienced counsel, assist with discovery efforts, and participate in a lengthy mediation process. Rough Tr. at 8:9–21; ECF No. 32-1 at 14. Further, neither Defendants nor any class member has objected to these fees. The Court approves them as fair and reasonable.

Finally, Plaintiffs' counsel requests that the Court approve $15,000 in attorney's fees, representing fifteen percent of the settlement fund. ECF No. 32-1 at 7. Under Federal Rule of Civil Procedure 23(h), "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." The amount requested here is *below* the range of "reasonable" attorneys' fees recognized in this Circuit, which generally runs from "twenty to thirty percent of the common fund." *In re Lorazepam*,

2003 WL 22037741, at *7. And again, neither Defendants nor any class member has objected to the proposed attorneys' fees. For these reasons, the Court approves the fee request.

## IV. Conclusion

For all the reasons explained above, the Court will, in a separate order, grant the parties' Joint Motion for Final Certification of Class for Settlement Purposes and for Approval of Class Action Settlement. ECF No. 35.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: May 28, 2019